IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCO TORRES-RODRIGUEZ,<br>          Defendant. | CRIMINAL CASE NO.<br>1:15-CR-00342-WSD-JFK |

**REPORT AND RECOMMENDATION**

Pending before the court is Defendant Marco Torres-Rodriguez's motion [Doc. 13] to dismiss the indictment for violation of the Speedy Trial Act. Defendant asserts that the Speedy Trial Act was violated due to the Government's failure to indict him within thirty days of his being taken into custody by Immigration and Customs Enforcement ("ICE") authorities on August 4, 2015. [Id. at 1-9]. The Government opposes the motion to dismiss contending that the civil detention by ICE authorities did not trigger the running of the Speedy Trial clock. [Doc. 15].

**I.    Background Facts**

On August 4, 2015, Homeland Security Investigations ("HSI") Special Agent Andrew Clark and Enforcement and Removal Operations ("ERO") Officer Richard

AO 72A
(Rev.8/82)

Lall contacted and interviewed Defendant Torres-Rodriguez. [Doc. 13 at 1, Exhibit B (Report of Investigation); Doc. 15 at 2]. Prior to contacting Defendant, Special Agent Clark was aware that Defendant was a citizen of Honduras, had a lengthy criminal history and had been removed/deported from the United States on or about April 17, 2007, and July 15, 2009. [Doc. 13, Exhibit B]. After Special Agent Clark identified himself, he requested Defendant's identification, and Defendant produced a Honduran passport. [Id.]. The agent arrested Defendant advising him that "he was under arrest for re-entering the United States after being previously removed." [Id.]. Defendant was arrested pursuant to a Warrant for Arrest of Alien (I-200), that is, an immigration warrant based on his presence in the United States "in violation of the immigration laws." [Doc. 15 at 2, Exhibit A (Warrant for Arrest of Alien)].[1] And, "[b]ecause of the possibility of a criminal prosecution for Title 8, USC, 1326, SA Clark advised TORRES of his Miranda rights . . . ." [Doc. 13, Exhibit B]. Defendant waived his rights and agreed to answer questions admitting that he was a citizen of Honduras, that he had been deported and that he had reentered the United States two years ago through Laredo, Texas. [Id.].

---

[1] The warrant specifies that Defendant was "liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act." [Id.].

2

Defendant was transported to the Atlanta City Detention Center "for continuation of administrative removal proceedings[,]" where he was processed for the administrative arrest. [Id.]. His fingerprints were obtained by ERO Officer Lall, and, on the fingerprint card under the heading "Charge/Citation" was the following notation: "8 USC 1326A - RE-ENTRY AFTER DEPORTATION." [Doc. 13, Exhibit A ("Fingerprint Card")]. A Notice of Intent/Decision to Reinstate Prior Order [of deportation/removal], Form I-871 [Doc. 15, Exhibit B ("Form I-871")] was issued on August 5, 2015, by Officer Lall [Doc. 15 at 2].[2]

Although the date is not specified, Special Agent Clark presented information regarding Defendant to Assistant U.S. Attorney Kim Dammers. [Doc. 13, Exhibit B].[3] On September 15, 2015, a federal grand jury in the Northern District of Georgia returned a one count indictment charging Defendant with illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a) and (b)(1). [Doc. 1]. Forty-two days

---

[2]After being deported, an alien is subject to summary deportation through the reinstatement of the prior order of deportation. See 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8. Therefore, once the I-871 Form is executed, the alien does not appear before an immigration judge and cannot appeal removal to the Board of Immigration Appeals. See 8 C.F.R. § 241.8.

[3]Contrary to Defendant's statement that this occurred on August 5, 2015 [Doc. 13 at 2], the undated report of investigation does not state when this occurred [Doc. 13, Exhibit B].

3

elapsed from the date of Defendant's arrest on August 4, 2015, and the return of the indictment on September 15, 2015.  [Doc. 13 at 2].

Additional facts will be set forth as necessary during discussion of Defendant's motion to dismiss.

**II.   Discussion**

The Speedy Trial Act, 18 U.S.C. § 3161(b), provides in pertinent part that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges."  And 18 U.S.C. § 3162(a)(1) provides in pertinent part that "[i]f, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . ., such charge against that individual contained in such complaint shall be dismissed or otherwise dropped."  Defendant contends that this provision of the Speedy Trial Act was violated because he was not indicted within thirty days of August 4, 2015, when he was taken into ICE custody.  [Doc. 13].  In support of his motion, Defendant argues that:  (1) when he was arrested, Special Agent Clark advised Defendant "that he was under arrest for re-entering the United States after being previously deported[;]" (2) that his

4

fingerprint card identified the offense of arrest as "8 USC 1326A-RE-ENTRY AFTER DEPORTATION[;]" (3) that on August 5, 2015, the Special Agent presented information to the AUSA about Defendant; and that Defendant was not indicted until September 15, 2015, on the charge of re-entry after deportation. [Doc. 13]. Defendant's arguments are unpersuasive.

In United States v. Noel, 231 F.3d 833 (11th Cir. 2000), the Eleventh Circuit Court of Appeals joined other circuits holding that because immigration "detentions preceding deportation are civil in nature, they do not trigger the Speedy Trial Act." Id. at 836; and see United States v. Drummond, 240 F.3d 1333, 1335-36 (11th Cir. 2001) (same). Citing to Noel, the court in Drummond stated, however, that a "limited exception" to this rule applied "when deportations are used by the government as 'mere ruses to detain a defendant for later criminal prosecution.'" 240 F.3d at 1336 (quoting, *inter alia*, Noel, 231 F.3d at 836). "To invoke this exception, . . . [the court] . . . placed the burden on the detainee to establish that the 'primary or exclusive purpose of the civil detention was to hold him for future prosecution.'" Id. (citation omitted); and see United States v. Pasillas-Castanon, 525 F.3d 994, 998 (10th Cir. 2008) ("In short, if the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception."). As noted by the Fifth Circuit Court of Appeals,

5

"[t]his 'ruse exception' is 'an effective way of protecting against the possibility of collusion between federal criminal authorities and civil or state officials.'" United States v. Molina, 535 Fed. Appx. 417, 418-19 (5th Cir. 2013) (quotation omitted) (noting that the defendant did not present any evidence of collusion between the U.S. Attorney's Office and immigration authorities to delay the defendant's deportation); Pasillas-Castanon, 525 F.3d at 998 ("Without evidence of wrongful collusion for [the primary or exclusive purpose of detaining the defendant for criminal prosecution], the exception does not apply.").

In this case, Defendant was detained based on the reinstated deportation order for forty-two days before the indictment was returned. [Doc. 1; Doc. 13 at 1-2, Exhibit B; Doc. 15 at 1-2, Exhibits A and B]. Defendant does not argue that immigration authorities lacked a lawful basis for his detention, and the reinstated order of deportation establishes grounds for Defendant's continued detention. And Defendant made no offer of proof of any interaction between prosecuting authorities and immigration officials regarding processing Defendant's deportation or removal or establishing that Defendant's deportation or removal was actually delayed pending the return of the indictment. The only interaction noted by Defendant and conceded by the Government is that Special Agent Clark, on an unknown date, presented information

6

regarding Defendant's conduct to the AUSA. [Doc. 13 at 2, Exhibit B; Doc. 15 at 5 & n.1]. The inference of collusion or of a ruse that Defendant apparently attempts to draw from the facts (1) that Defendant was advised he was arrested for re-entry after deportation and (2) that his fingerprint card indicates that Defendant's arrest was for 8 U.S.C. § 1326(a) - the same charge for which he was indicted - simply is insufficient to carry his burden of proof.

First, the period of the delay between arrest and indictment, forty-two days, is too short to support an inference of collusion between immigration and prosecuting authorities. See, e.g., Molina, 535 Fed. Appx. at 419 ("the 54-day delay between the Molinas' immigration arrests and their criminal indictments does not support an inference of collusion"). And the period of detention in this case, only forty-two days, otherwise does not support application of the "ruse exception."[4] See United States v. Dyer, 325 F.3d 464, 468-69 (3rd Cir. 2003) (noting, in a case where the indictment was returned within forty-one days of the civil detention, that the "Speedy Trial Act's time limit is not triggered by the fact that the [ICE] is conducting a reasonable investigation

---

[4]This conclusion is reinforced by the fact that, as noted *supra*, "if the detaining authorities have a lawful basis for their civil detention, a defendant is not entitled to invoke the exception" to the rule that civil immigration detention does not trigger the Speedy Trial Act. Pasillas-Castanon, 525 F.3d at 998.

7

in order to decide whether the reentrant should be prosecuted or deported without prosecution"); United States v. Garcia-Martinez, 254 F.3d 16, 17, 19-20 (1st Cir. 2001) (in absence of proof of collusion, the facts that the defendant was arrested by ICE authorities on December 28, 1998, that, after obtaining the defendant's A-File, the ICE officer contacted and met with the prosecutor between January 13 and January 19, 1999, that a criminal complaint was filed on January 25, 1999, and that the defendant was indicted on February 17, 1999, did not trigger application of the Speedy Trial Act, at least, prior to the filing of the criminal complaint; the court found that the record refutes the defendant's claim that ICE never intended to deport him but held him only for prosecution).

It is obvious that immigration authorities made a referral to the U.S. Attorney's Office regarding Defendant Torres-Rodriguez's case.  But that fact, whenever the referral was made after his civil detention, does not support a finding that he was held primarily or exclusively for prosecution or that the authorities colluded to delay his deportation or removal to allow *primarily* or *solely* for prosecution. See Molina, 535 Fed. Appx. at 419 (noting that "'[t]he fact that federal criminal authorities might have known about [the alien's] detention . . . does not necessarily support a conclusion that they colluded with . . . [ICE] to detain [the alien]'") (citation omitted); Dyer, 325 F.3d

8

at 469 ("'the fact that federal [criminal law enforcement] officials are aware of, and perhaps slightly involved in, the deportation proceedings . . . would not establish, as a matter of law, the requisite collusion'") (quoting United States v. Grajales-Montoya, 117 F.3d 356, 366-67 (8th Cir. 1997) ("the fact that federal officials are aware of, and perhaps slightly involved in, the deportation proceedings (as was the AUSA who attended [the defendant's] first immigration hearing) would not establish, as a matter of law, the requisite collusion")); United States v. Pinto-Roman, 337 F. Supp. 2d 781, 786 (E.D. Va. 2004) ("even if federal prosecutors had been aware of, or played some role in, defendant's ICE detention, this would not, by itself, warrant the conclusion that they colluded with the ICE to detain defendant for purposes of criminal prosecution"). Likewise, the fact that all of the information necessary to charge Defendant criminally was known to immigration and prosecuting authorities more than thirty-days before the indictment was returned does not trigger the running of the Speedy Trial clock. See Pinto-Roman, 337 F. Supp. 2d at 787 (rejecting the defendant's argument that the Speedy Trial Act was triggered when prosecuting authorities obtained facts supporting criminal charges, the court stated that "Congress did not prescribe that the thirty-day period to indict would begin to run at the moment the government had enough factual information to indict; to the contrary, Congress clearly made the defendant's arrest, or

9

a formal charge, the event that would trigger the Speedy Trial Act's thirty-day clock"); and see United States v. Medina-Gutierrez, 2012 WL 202052, at *3 (S.D. Tex. January 23, 2012) ("when the immigration detainer issued, . . . [the defendant] could have been criminally charged with illegal reentry, [however,] that fact alone is insufficient to trigger the ruse exception").

Although some courts have stated that an immigration arrest triggers the Speedy Trial clock "where the administrative and criminal charges against the defendant are identical such that the detention is simply used as a 'substitute for criminal arrest[,]'" United States v. De La Pena-Juarez, 214 F.3d 594, 598 (5th Cir. 2000) (quoting United States v. Restrepo, 59 F. Supp. 2d 133, 137 (D. Mass. 1999); citing, *inter alia*, United States v. Vasquez-Escobar, 30 F. Supp. 2d 1364, 1367 (M.D. Fla. 1998)),[5] the facts in the cases from which this language originates establish actual collusion between immigration officials and prosecuting authorities. See Pinto-Roman, 337 F. Supp. 2d at 786-87 (discussing cases and holding that "some evidence of collusion to detain

---

[5]The court in De La Pena-Juarez, however, further stated that the ruse exception will only be applicable "where the defendant demonstrates that the primary or exclusive purpose of the civil detention was to hold him for future criminal prosecution." 214 F.3d at 598.

10

defendant to facilitate his prosecution is still necessary even when the administrative and criminal charges are identical").

In Restrepo, the defendant was arrested by immigration officials on September 28, 1998, for illegal re-entry after having been previously deported, and, on that date, the arresting agent completed a Record of Deportable/Inadmissible Alien in which he noted the defendant's previous deportation. A handwritten entry on the form states that the defendant "was 'amenable to prosecution for [violation of] 8 U.S.C. § 1326 . . . .'" 59 F. Supp. 2d at 134-35. The next day, an I-871 form was served on the defendant indicating the intent to reinstate the previous order of deportation. Id. at 135. On the defendant's fingerprint card, under the heading "Charge/Citation," the entry states "Reentry after deportation 8 U.S.C. § 1326" and, under the heading Deposition," the entry states "Detained by INS pending prosecution/removal." Id. at 136. On November 6, 1998, immigration officials presented the case to the U.S. Attorney's Office, and there is no record of any activity by immigration officials on the case between September 28, 1998, and November 6, 1998, a period of thirty-nine days. Id. On November 20, 1998, a federal criminal complaint was filed against the defendant, and on December 2, 1998, sixty-five days after his arrest, a federal indictment was returned charging the defendant with a violation of 8 U.S.C. § 1326.

11

Id. At the evidentiary hearing, although stating that the policy of immigration officials was to only detain individuals to obtain the necessary travel documents and not to delay deportation to facilitate a criminal investigation, "the government acknowledged that this policy was not followed in Restrepo's case." Id. at 135-36. Based on all of these facts, which were considered in addition to the similarity of the immigration and criminal charges, the court found that "the [immigration officials] did not act with all deliberate speed to remove Restrepo after he was finally determined to be removable . . . . Indeed, it made no effort to effect his removal. Instead, the [immigration officials] used the period of Restrepo's detention solely to prepare criminal charges based on the conduct for which he was civilly detained." Id. at 138-39. The court dismissed the indictment finding that the immigration arrest triggered the Speedy Trial Act. Id. at 139. The decision in Restrepo is not persuasive authority herein in light of the Government's acknowledgment therein, as found by the court, that the defendant was detained solely to prepare criminal charges.

And in Vasquez-Escobar, an immigration detainer was placed on the defendant, who was in state custody, on September 7, 1997, and an order of removal was entered on September 10, 1997. 30 F. Supp. 2d at 1365. On September 15, 1997, immigration officials began preparing the case for submission to the U.S. Attorney's Office. Id.

12

On December 31, 1997, the state charges were dismissed, and on January 1, 1998, the defendant was taken into immigration custody. In the Report of Deportable/Inadmissible Alien prepared on January 2, 1998, the facts regarding the defendant's illegal re-entry after deportation were set forth. Id. On March 18, 1998, the U.S. Attorney's Office accepted the case for prosecution, and an indictment charging a violation of re-entry after deportation was filed on May 27, 1998. Id. In granting the defendant's motion to dismiss for violation of the Speedy Trial Act, the court found that "the government admits that it was not holding [the defendant] to effectuate his deportation under § 241(a)(5). Instead, it held him after December, 1997, for illegally reentering the United States, specifically to provide the government the time and evidence necessary to establish his 'guilt beyond a reasonable doubt' for an identical criminal charge of illegally reentering the United States under 8 U.S.C. § 1326(a)." 30 F. Supp. 2d at 1367. There is no such direct proof - or proffer of proof - in the case before the court. As important, the period of the delay, five months pending the return of the indictment in Vasquez-Escobar, is significantly longer than the forty-two day period in this case. The decision in Vasquez-Escobar is, likewise, not persuasive authority.

In this case, Defendant was lawfully arrested on August 4, 2015, on a Warrant for Arrest of Alien. [Doc. 15, Exhibit A]. And he was lawfully detained in civil custody pending deportation based on the Notice of Intent/Decision to Reinstate Prior Order of detention executed on August 5, 2015. [Id., Exhibit B]. After the Special Agent Clark spoke with the Assistant U.S. Attorney about the case, Defendant was indicted within forty-two days of his civil immigration detention. [Doc. 1]. Under the Speedy Trial Act, he was not in custody on the criminal charge of illegal re-entry after deportation before September 15, 2015. See Noel, 231 F.3d at 836 (immigration "detentions preceding deportation are civil in nature, they do not trigger the Speedy Trial Act."). Besides the fact that the grounds for his civil detention and the charge in the indictment are the same, Defendant proffers no other facts to support a finding that the "limited exception" to the rule that civil immigration detentions do not trigger the Speedy Trial Act applies in this case. See Drummond, 240 F.3d at 1335-36. The Defendant has not offered proof to establish "that the 'primary or exclusive purpose of [his] civil detention was to hold him for future prosecution.'" Id. (citation omitted). Accordingly, Defendant has not proven that the Government violated the Speedy Trial Act in bringing the indictment in this case.

## III.  Conclusion

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motion [Doc. 13] to dismiss the indictment be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO ORDERED AND RECOMMENDED** this 16th day of December, 2015.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE